IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHINYERE UZOUKWU          :

                          :

    v.                    :    Civil Action No. DKC 12-3228

PRINCE GEORGE'S COMMUNITY :
    COLLEGE BOARD OF
    TRUSTEES, et al.      :

**MEMORANDUM OPINION**

Presently pending and ready for review in this constitutional due process case are: (1) the motion to dismiss the amended complaint filed by Defendants Prince George's Community College ("PCGG"), the PGCC Board of Trustees, Andristine M. Robinson, Tyjuan A. Lee, Muriel Adams, Pamela Caesar, Patrick Adeywumi, LaVonda Elliott, Margarette Kellner, and Felice Smith (together, "the PGCC Defendants") (ECF No. 22); (2) the motion to seal filed by PGCC (ECF NO. 25); and (3) the motion for leave to file surreply filed by Plaintiff Chinyere C. Uzoukwu (ECF No. 30). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to seal will be granted, and the motion for leave to file surreply will be denied. Plaintiff's federal claims will all be dismissed for failure to state a claim, and her remaining state law claims will be remanded to state court for further consideration.

## I. Background

### A. Factual Background

The following facts are taken from the amended complaint filed by Plaintiff Chinyere C. Uzoukwu. (ECF No. 20). The amended complaint alleges the existence of a far-reaching conspiracy to discriminate and retaliate against Plaintiff, a Nigerian woman who resides in Maryland. The conspiracy purportedly originated during the early 2000s, when Plaintiff worked at the Democratic National Committee under the supervision of Defendant Harold J. Gist. Gist and his "associates" – including Defendant Rodney Byrd, and Mamdi Diane and Mori Diane, acting through Defendant AMEX International, Inc. ("AMEX") – allegedly attempted to divest Plaintiff and her father of certain property interests. The complaint contains few specifics about the early days of the alleged conspiracy, but implies that Gist instituted the scheme because of the similarity between Plaintiff's name and the name of Chinyere E. Uzoukwu, the spouse of another D.C. politician.

From 2006 to 2008, Plaintiff served as a Policy Analyst with the Metropolitan Washington Council of Governments ("COG"), where she was supervised by Defendant Calvin L. Smith. Smith allegedly "extended the scheme of retaliation . . . based on ethnicity/similarity of name" by invoking the same tactics used by Gist and his associates. (ECF No. 20 ¶ 57). For example,

Smith purportedly made false reports about Plaintiff; solicited other employees to bully Plaintiff; and initiated an investigation into Plaintiff in an attempt to show that "Plaintiff was not the owner of her property assets, and [was] employing an identity not her own." (*Id.*). On November 13, 2007, Smith issued a memo asserting that Plaintiff was "homeless and an undocumented immigrant" and directing that she undergo mandatory counseling or face termination. (*Id.* ¶ 66). The harassment allegedly culminated with Plaintiff's termination in March 2008. Plaintiff "believes" that Smith's actions were part of the conspiracy because "Smith and Gist have affiliation[s]/connection[s] through involvement" with local political organizations. (*Id.* ¶ 86-87).

After being terminated from COG, Plaintiff enrolled in the OneStop WorkForce Services program run by Prince George's County, Maryland. As part of her OneStop training, Plaintiff enrolled in the Medical Coding/Billing Program at PGCC in August 2008. Plaintiff alleges that, throughout her time at PGCC, she was subjected to discriminatory and retaliatory treatment by other students, her professors, and school employees. Plaintiff alleges, upon information and belief, that all of this harassing conduct was at the direction of Gist, Smith, and their associates. (*Id.* ¶¶ 156-57). Specifically, Plaintiff alleges that Smith and Gist recruited a "gang" of approximately 15-20

students (including other "African/Nigerian students") to track Plaintiff's activities on campus and to initiate altercations with her by accusing her of using someone else's identity.

Plaintiff also alleges that her peers and instructors in the Medical Coding/Billing Program subjected her to harassment. In particular, Defendants LaVonda Elliott, Margarette Kellner, and Felice Smith allegedly refused to work with Plaintiff on group projects and falsely alleged that she was using the identity of Chinyere E. Uzoukwu. Defendant Pamela Caesar, an associate professor, allegedly accused Plaintiff of plagiarizing; refused to give her an extension of time to complete an exam, despite giving other students extensions; and refused to give Plaintiff credit for certain group assignments. Defendant Muriel Adams, a PGCC administrator, purportedly encouraged Plaintiff to drop out of the program and declined to approve Plaintiff's enrollment in required courses. According to Plaintiff, all of these actions were "premised on false allegations of her ethnicity" and were in furtherance of "the same retaliatory fraudulent ethnic outreach/narrative of Gist, and the scheme Smith employed in Plaintiff's work." (ECF No. 20 ¶¶ 145, 155).

On March 24, 2010, Plaintiff filed a complaint with Defendant Tyjuan A. Lee, Ph.D., the PGCC Vice President of Student Services, to alert PGCC to the existence of the alleged

conspiracy, including the involvement of Calvin Smith and Gist. PGCC later issued a letter stating that there was insufficient evidence to support a claim.

In May 2010, Plaintiff completed the Medical Coding/Billing Program and became a PGCC alumnus. Plaintiff nonetheless continued to use PGCC facilities and relied on PGCC's career counseling services. She also enrolled for classes during some subsequent semesters, including Fall 2010 and Spring 2011 (but not Summer 2011).

Plaintiff alleges that, on October 1, 2010, she was studying at the PGCC Laurel campus when she got into an argument with Defendant Patrick Adeywumi, a PGCC employee. Adeywumi purportedly told her that "everybody [throughout PGCC] knows what you are trying to do, using somebody else's identity." (*Id.* ¶ 165). Adeywumi allegedly threatened to have Plaintiff removed from the premises and then went on to repeat his allegations to another student. Plaintiff reported the incident to PGCC. On October 12, 2010, PGCC issued a reply characterizing the incident as "poor customer service" but declining to take any other action. (*Id.* ¶ 167).

Following the October 1st incident, Plaintiff filed a number of reports with Lee and other PGCC administrators regarding various incidents of harassment on PGCC's campuses. Each time, PGCC responded by stating that there was insufficient evidence

for her claims.  On July 26, 2011, Defendant Andristine M. Robinson, Director of Student Services Operations at PGCC, issued a letter to Plaintiff stating as follows:

> Prince George's Community College requires that when you are on campus you must follow the Code of Conduct.  Due to your ongoing inappropriate behavior, you are being barred from all college property.  A thorough review of college records shows that you are not currently enrolled in class nor are you an employee.  Therefore, there is no valid reason for your presence on college property.
>
> This letter is to serve as a warning that should you return to this campus or any other college property without the express permission of the Office of the Vice President for Student Services, you will be arrested and charged with trespassing. Should you need further clarification please do not hesitate to contact this office at (301) 322-0412.

(ECF No. 28-1, at 2) ("the July 26 Letter").[1]

Plaintiff alleges that the July 26 Letter was "premised on Plaintiff's ethnicity" and has no factual basis as she "has never engaged[] in any type of conduct, behavior, or violation

---

[1] "[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted).  Here, the July 26 Letter is clearly integral and explicitly relied on in the amended complaint, and Plaintiff does not challenge the authenticity of the version submitted by Defendants as ECF No. 28-1.

that could be or would be considered inappropriate and/or non-compliant with any cited Student Code of Conduct and/or policy in effect at any time." (ECF No. 20 ¶¶ 190-91). Plaintiff also alleges that she was never provided with an opportunity to be heard with respect to the charges raised in the July 26 Letter, either before or after its issuance. Plaintiff asserts that Robinson, "acting independently and/or jointly with Lee," caused copies of the July 26 Letter to be sent to the Chief of the PGCC Police. Plaintiff avers that the distribution of the July 26 Letter has hurt her employment search and her record as a PGCC student. Plaintiff also alleges that the July 26 Letter effectively precluded her from pursuing a technology certificate and also deprived her of the benefits of her membership in the PGCC Alumni Association, which purportedly did not expire or come up for renewal until September 2011.

The amended complaint alleges that the conspiracy against the Plaintiff has continued since she was banned from PGCC campuses. In particular, Plaintiff avers that members of the "gang" of students recruited by Gist and Calvin Smith assaulted her on several occasions in 2012 while she was using library facilities at the University of Maryland, College Park, and again later at the Hyattsville Branch of the Prince George's Memorial Library System.

**B. Procedural Background**

On August 9, 2012, Plaintiff filed a fifteen-count complaint in the Circuit Court for Prince George's County, Maryland, asserting claims under 42 U.S.C. § 1981; 42 U.S.C. § 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"); and Maryland common law. (ECF No. 2). On November 2, 2012, then-Defendant the University of Maryland, College Park removed the action to this court based on federal question jurisdiction. (ECF No. 1). On November 9, 2012, the University of Maryland and the PGCC Defendants filed motions to dismiss. (ECF Nos. 6 & 7). On November 30, Plaintiff filed an opposition to the motions and a motion for leave to amend (ECF No. 16), to which she attached a proposed amended complaint that withdrew some of her claims and dismissed some Defendants. (ECF No. 16-1). On January 9, 2013, the proposed amended complaint was docketed pursuant to Fed.R.Civ.P. 15(a)(1)(B). (ECF No. 19).[2]

On January 22, 2013, the PGCC Defendants moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). (ECF

_____

[2] When she supplemented her motion to amend with a red-lined version of her proposed amended complaint on December 13, 2012, Plaintiff also submitted a third version of her complaint as ECF No. 18-1, which uses a different numbering scheme. All parties appear to agree, however, that the document docketed as ECF No. 20 and titled "Amended Complaint" (which originally was filed as ECF No. 16-1) is the operative complaint.

No. 22).[3]   The PGCC Defendants also filed a motion to seal certain exhibits to their motion.  (ECF No. 25).   Plaintiff filed an opposition (ECF No. 26), and the PGCC Defendants replied (ECF No. 28).  Plaintiff then moved for leave to file a surreply.  (ECF No. 30).

## II.  Motion to Seal

The PGCC Defendants move to seal ECF No. 22-4, an exhibit to their motion containing Plaintiff's academic transcripts. (ECF No. 25).  Local Rule 105.11 requires all motions to seal to include "proposed reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection."  Before sealing any documents, the non-moving party must be provided with notice of the request to seal and an opportunity to object.  *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).  This notice requirement may be satisfied by docketing the motion "reasonably in advance of deciding the issue."  *Id.* at 234.   If the court decides that sealing is

_____

[3] The pending motion to dismiss is filed only on behalf of the PGCC Defendants.  Defendants Byrd, Gist, and Calvin Smith have yet to be served.   In the Memorandum Opinion and Order issued on June 17, 2013, Plaintiff was given an additional 90 days to effect service.  (ECF No. 33).  Plaintiff filed a return of service for AMEX on January 28, 2013 (ECF No. 31). AMEX filed a motion to strike the return of service, contending that service on Boniface Cobbina was not effective. (ECF No. 36). Finally, the University of Maryland was not named as a Defendant in the amended complaint.

appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives to sealing. *Id.* at 235.

Here, the PGCC Defendants' motion does not comply with Local Rule 105.11. Nonetheless, sealing the transcripts is appropriate as they contain sensitive information about Plaintiff's academic performance. Given that Plaintiff's grades pervade the exhibit, redaction is not a viable alternative. Additionally, because a district court is generally "forbidden" from considering "evidence outside the pleadings" in ruling on a Rule 12(b)(6) motion, *see Bosinger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007), the transcripts themselves will not play a role in ruling on the PGCC Defendants' motion. Finally, Plaintiff has not opposed the PGCC Defendants' request. Accordingly, the motion to seal will be granted.

## III. Motion for Leave to File Surreply

Plaintiff seeks leave to file 21-page surreply. (ECF No. 30). "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a). Although a district court has discretion to allow a surreply, surreplies are generally disfavored. *Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, at *9 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the

opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. RWT-12-3109, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted).

Here, to support her request, Plaintiff asserts that materials submitted by the PGCC Defendants in connection with their reply warrant application of "equitable estoppel." (ECF No. 30-2, at 1). Plaintiff is apparently referring to the section of the PGCC Defendants' reply that argues, for the first time, that the issuance of the July 26 Letter comported "with PGCC's undisputed policy of issuing a bar letter then holding a meeting," meaning that Plaintiff had notice and an opportunity to be heard. (ECF No. 28, at 6). To support this argument, the PGCC Defendants attach an email chain between Plaintiff and Robinson. (ECF No. 28-2). In her proposed surreply, Plaintiff contends that the email chain demonstrates that Robinson did *not* follow the PGCC Student Handbook in issuing the July 26 Letter. (ECF No. 30-1, at 5-8).

As discussed in more detail below, the sufficiency of the process afforded to Plaintiff by PGCC in connection with the July 26 Letter need not be addressed because Plaintiff fails plausibly to allege that she had any constitutionally protected

interest in accessing campus facilities.  Accordingly, the PGCC Defendants' newly raised arguments about PGCC's policy for issuing bar letters will not be considered, meaning that there also is no need to consider Plaintiff's rebuttal arguments. Because the remainder of the proposed surreply retreads the same ground covered in Plaintiff's opposition (*compare* ECF No. 30-1, at 9 through 21 *with* ECF No. 26), the motion will be denied.

## IV. Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266,

268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

The amended complaint (ECF No. 20) is confusing as to which counts and which Defendants remain. For example, the amended complaint states that Plaintiff withdraws the claims that she asserted as Counts III, IV, XII, XV, and XVI in the original

complaint, but these counts are still accounted for in Plaintiff's numbering system. Compounding this confusion is that, in connection with her opposition, Plaintiff submitted a document titled "Errata for Amended Complaint" that purports to make "technical corrections in the caption of her complaint and designation of her claims." (ECF No. 26-2). In reality, however, the "Errata" is essentially a second amended complaint that seeks to assert new claims and theories of recovery. As set forth below, all of the federal claims asserted against the PGCC Defendants must be dismissed, even when the changes proposed in Plaintiff's "Errata" are considered. The remaining state law claims will be remanded to state court.

### 1. Adams, Caesar, Elliott, Kellner & Felice Smith

The original complaint asserted a Title VI claim against Robinson, Adeywumi, Lee, PGCC, Adams, Caesar, Elliott, Kellner, and Felice Smith. (ECF No. 2). The amended complaint, however, withdraws this claim and does not assert any other counts against this group of Defendants. (*See generally* ECF No. 20). In her opposition, Plaintiff explains that, although she withdrew her Title VI claim, she "did not intend to dismiss these defendants" altogether. (ECF No. 26, at 4-5). Plaintiff argues that the factual allegations of the amended complaint give rise to a claim against all named Defendants for conspiracy to deprive her of her civil rights in violation of 42 U.S.C.

14

§ 1985(3). Therefore, in her "Errata," Plaintiff proposes adding a new claim to Count I for "Conspiracy to Retaliate/Retaliatory Motive, Deprivation of Liberty/Property" against all Defendants, including Adams, Caesar, Elliott, Kellner, and Felice Smith.

Plaintiff's attempt to assert a Section 1985(3) claim against these Defendants is unavailing for two reasons. First, it is well-established that a plaintiff cannot amend her complaint through the use of opposition briefs. *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion). Plaintiff's *pro se* status does not excuse her from complying with the requirements of Fed.R.Civ.P. 15.

Second, the allegations of the amended complaint, even as supplemented by Plaintiff's opposition and "Errata," do not plausibly allege a conspiracy claim under Section 1985(3), which requires the following elements to be shown:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). "[T]o prove a section 1985 'conspiracy,' a claimant must show an agreement

15

or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377. The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

Although Plaintiff conclusorily alleges, upon information and belief, that the actions of the PGCC Defendants must be connected to the actions of Gist, Calvin Smith, and their associates because they all used the same "fraudulent narrative that Plaintiff was employing the identity of another," the amended complaint does not contain any *facts* that show an agreement or meeting of the minds among the Defendants. Moreover, as explained below, the complaint does not plausibly establish any deprivation of Plaintiff's constitutional rights. Therefore, Plaintiff's attempt to add a Section 1985 conspiracy claim to Count I will be rejected, and Defendants Adams, Caesar, Elliott, Kellner, and Felice Smith will all be dismissed.

**2. Section 1983 Procedural Due Process Claims – Counts V, VI, VII, & VIII**

Counts V, VI, VII, and VIII of the amended complaint assert procedural due process claims pursuant to 42 U.S.C. § 1983 against Robinson and Lee. (ECF No. 20 ¶¶ 210-39). Each of these counts asserts that the issuance of the July 26 Letter deprived Plaintiff of a constitutionally protected interest in

using PGCC facilities for education and training without adequate process, in violation of the Fourteenth Amendment to the United States Constitution.

To state a procedural due process claim under Section 1983, Plaintiff must plausibly allege that she had a constitutionally protected property or liberty interest and that her interest was deprived without sufficient process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). With respect to the first prong, Plaintiff concedes that she was not a PGCC student when she received the July 26 Letter. Plaintiff nonetheless asserts that she had a constitutionally protected interest in using PGCC facilities by virtue of: (1) her status as a PGCC alumna in good standing; (2) her status as a prospective PGCC student contemplating enrollment in another program; and (3) her unexpired membership in the PGCC Alumni Association. As explained below, none of these theories are availing.

The prevailing rule is that alumni of public education institutions do not have a constitutionally protected interest in accessing campus facilities. *See, e.g.*, *Moore v. Ricotta*, 29 F.App'x 774, 775 (2[d] Cir. 2002) (a plaintiff who received a letter from a public university banning him from campus had no procedural due process claim because, "[a]t the time of this [letter], [the plaintiff] was no longer a student at the University"; rather, he had "the status of a visitor" and

therefore had no "Fourteenth Amendment liberty or property interest in being present on campus"); *Souders v. Lucero*, 196 F.3d 1040, 1044-46 (9th Cir. 1999) (alumnus of a public university could not challenge an order banning him from campus as a due process violation because he had no "constitutionally protected interest in having access to the University," even though the campus is generally open to the public); *Holbach v. Jenkins*, No. 09-cv-026, 2009 WL 2382756, at *6 (D.N.D. July 30, 2009) (the plaintiff did not have a due process claim because, at the time the university issued the ban letter, he was not a student or employee but instead a member of the general public without any protected liberty or property interest in being on campus), *aff'd*, 366 F.App'x 703 (8th Cir. 2010). Likewise, prospective students who have not yet enrolled in classes are viewed as members of the general public who do not have a constitutionally protected interest in accessing campus facilities. *See Moore*, 29 F.App'x at 775 (the plaintiff – an alumnus of the school's undergraduate program who had applied to a graduate program but had not yet been admitted at the time of the ban letter – did not have a protected interest in being on campus).

Based on this authority, Plaintiff did not have any constitutionally protected interest in accessing PGCC campus facilities by virtue of her status either as a PGCC alumna or as

a prospective student thinking about enrolling in a new program. Rather, at the time of the July 26 Letter, Plaintiff was merely a member of the general public.

Plaintiff attempts to avoid this result by arguing that she had a contract-based property right to access campus facilities based on her membership in the PGCC Alumni Association. (ECF No. 26, at 12-16). Not all rights derive from contractual relationships with the state qualify as constitutional property rights, however. *Coastland Corp. v. Cnty. of Currituck*, 734 F.2d 175, 178 (4th Cir. 1984). Determining whether a contract creates a constitutionally protected property right involves a two-step inquiry. First, it must be determined whether the contract in question "create[s] an entitlement, which can result from contract provisions permitting termination only for cause." *Blackwell v. Mayor & Comm'rs of Delmar*, 841 F.Supp. 151, 155 (D.Md. 1993). Second, the right created "must be of a type accorded protection under the due process clause." *Id.* at 155-56. The second element is satisfied if "the government's action in terminating the contract . . . result[s] in revocation of the plaintiff's status." *Id.* (internal quotation marks omitted).

Here, there are no specific factual allegations in the amended complaint about the benefits associated with Plaintiff's membership in the Alumni Association or the provisions of any membership agreement she entered into. (*See generally* ECF No.

20).  Absent such allegations, there is no basis for concluding that Plaintiff's membership could give rise to a constitutionally protected property interest.[4]

Because Plaintiff does not plausibly allege a constitutionally protected interest in accessing campus facilities, there is no need to address the sufficiency of the process afforded to Plaintiff by PGCC in connection with the July 26 Letter.  Accordingly, the due process claims asserted in Counts V, VI, VII, and VIII will be dismissed.

### 3. Section 1983 Equal Protection Claims – Counts V & VI

Counts V and VI also purport to assert Section 1983 equal protection claims against Robinson and Lee based on the issuance

---

[4] In her opposition, Plaintiff attaches an excerpt from the PGCC Student Handbook discussing the Alumni Association.  That document states that PGCC students are eligible to receive one year of free membership in the Alumni Association upon graduation and that members "receive newsletters, invitations to various campus events, and access to the library, career and computer centers."  (ECF No. 26-5).  Even if it were properly considered in ruling on the PGCC Defendants' motion to dismiss, this excerpt would not save Plaintiff's procedural due process claims.  First, the excerpt does not establish that Plaintiff's membership agreement with the Alumni Association contained any sort of provision that limits the Association's ability unilaterally to alter the benefits bestowed on members or terminate an alumna's membership.  Second, an entitlement to access the facilities of a public education institution is not the sort of entitlement that is afforded protection by the Fourteenth Amendment.  *See Southside Trust v. Town of Fuqyay-Varina*, 69 F.App'x 136, 138 (4th Cir. 2003) (unpublished) (explaining that the Due Process Clause protects contract rights "like [public] employment, welfare benefits, or utility services, when applicable law mandates that such rights may be terminated or withheld only for cause").

of the July 26 Letter. (ECF No. 20 ¶¶ 210-28). In her opposition, Plaintiff clarifies that she is asserting both a traditional equal protection claim based on national origin discrimination as well as a claim based on a "class of one" theory. (ECF No. 26, at 7-12). As set forth below, the amended complaint fails to state a claim under either theory.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause "'is essentially a direction that all persons similarly situated should be treated alike.'" *Sansotta v. Town of Nags Head*, --- F.3d ----, 2013 WL 3827471, Slip Op. at 17 (4th Cir. July 25, 2013) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equality in Athletics v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Here, Plaintiff argues that the amended complaint states an equal protection claim based on the July 26 Letter, which she contends was issued through "discriminatory" methods "premised

solely on Plaintiff's name" and therefore amounted to "racial harassment." (ECF No. 26, at 8). Plaintiff conclusorily alleges in the amended complaint that Robinson and Lee did not afford her "the same consideration as similarly situated students/individuals not of Plaintiff's ethnicity." (ECF No. 20 ¶ 194). Nowhere, however, does the complaint actually identify any similarly situated, non-Nigerian PGCC alumni or prospective students who received different treatment. Moreover, there are no facts that plausibly link the July 26 Letter to any race- or national origin-based discrimination on the part of Robinson or Lee. In her opposition, Plaintiff observes that "discrimination against people who possess surnames identified with particular racial or national groups is discrimination on the basis of race or national origin." (ECF No. 26, at 7 (citing *Orhorhage v. INS*, 38 F.3d 488, 498 (9th Cir. 1994))). Yet the facts alleged by Plaintiff do not give rise to a plausible inference that anyone affiliated with PGCC discriminated against her because her name is identifiable as a Nigerian or African surname. Rather, the amended complaint alleges that some PGCC students and employees (notably, *not* Robinson or Lee) harassed Plaintiff because they apparently believed she was using someone else's identity. Such allegations do not state an equal protection claim based on national origin or race.

Plaintiff alternatively asserts that, "regardless of race/ethnicity," she was treated differently than other prospective PGCC students and other alumni who belonged to the Alumni Association, giving rise to a so-called "class of one" equal protection claim. (ECF No. 26, at 9). In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the United States Supreme Court recognized that a plaintiff who is not a member of a protected class may prevail on an equal protection claim by showing "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), however, the Court limited the availability of the "class of one" theory by holding that it does not apply in the public employment context. The Court reasoned that:

> some forms of state action . . . by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases . . . treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. A number of district court decisions have applied the reasoning used in *Engquist* to preclude "class of one" equal protection claims in the public education context. *See, e.g.,*

*Nofsinger v. Va. Commonwealth Univ.*, No. 12-cv-236, 2012 WL 2878608, at *11 (E.D.Va. July 13, 2012) (because "[g]rading and assessing professionalism — especially in the graduate school context — by necessity involves a host of subjective, individualized assessments," the plaintiff could not use a "class of one" theory to challenge her dismissal from a physical therapy program by arguing that she was the only student who was precluded from retaking a clinical assignment); *Smith v. Seligman Unified Sch. Dist.*, 664 F.Supp.2d 1070, 1078–79 (D.Ariz. 2009) (high school student could not assert a "class of one" claim by arguing that she was the only student charged with marijuana and alcohol violations to be suspended); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461, 494 (E.D.N.Y. 2009) (in *dicta*, observing that *Engquist* "would foreclose a 'class of one' claim by plaintiffs in connection with the discretionary decision by school administrators . . . as to whether [the plaintiff] should have been removed from the school and disciplined").

Much like deciding what grade to give a student or what discipline to impose, an educational institution's decisions about restricting access to its campus facilities implicates subjective, individualized assessments. *Cf. Souders*, 196 F.3d at 1045 ("Not only must a university have the power to foster an atmosphere and conditions in which its educational mission can

be carried out, it also has a duty to protect its students by imposing reasonable regulations on the conduct of those who come onto campus."). Thus, even assuming that Plaintiff had pleaded facts to show that she was treated differently than every other prospective PGCC student and every other member of the PGCC Alumni Association, the "class of one" theory would not be available to her. Accordingly, the equal protection claims asserted in Counts V and VI will be dismissed.

### 4. Section 1983 Defamation Claims – Counts IX, X, & XVII

Count IX of the amended complaint asserts a Section 1983 claim for "Slander/Libel/Defamation" against Adeywumi, Robinson, and Lee based on the alleged falsity of the July 26 Letter. (ECF No. 20 ¶¶ 240-46). Count X asserts a Section 1983 claim for "Slander/Libel/Defamation" against Adeywumi, Robinson, and Lee based on Adeywumi's alleged statements on October 1, 2010. (*Id.* ¶¶ 250-59). Count XVII asserts a defamation claim against Robinson and Lee based on the alleged distribution of the July 26 Letter to PGCC law enforcement officials. (*Id.* ¶¶ 275-81).

As the PGCC Defendants observe in their motion (ECF No. 22, at 5-6), state law defamation claims generally are not actionable under Section 1983 because reputational injury, without more, does not amount to a deprivation of constitutional rights. *Paul v. Davis*, 424 U.S. 693, 696-97 (1976). A plaintiff can, however, state a due process claim under Section

1983 by plausibly alleging that "his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (quoting *Paul*, 424 U.S. at 711). Such claims are commonly referred to as "stigma-plus" claims. *Velez v. Levy*, 401 F.3d 75, 87 (2[d] Cir. 2005).

In her opposition, Plaintiff contends that she is asserting Counts IX and X, and part of Count XVII, "consistent with the stigma-plus criteria that implicate [F]ourteenth [A]mendment safeguards." (ECF No. 26, at 16-19, 23-24). Even assuming that Plaintiff could establish *prima facie* defamation claims based on the July 26 Letter and Adeywumi's accusations of identity theft,[5] she fails plausibly to allege the type of change in legal status necessary to maintain a "stigma plus" claim. Plaintiff asserts that the PGCC Defendants' purportedly defamatory statements had the effect of depriving her of her membership in the PGCC Alumni Association as well as her benefits and privileges as a prospective or returning student seeking to pursue another degree. As discussed above, however, neither of these alleged deprivations amounts to a change in legal status because

---

[5] To establish a *prima facie* case of defamation under Maryland law, a plaintiff must show: (1) that the defendant made a defamatory statement to a third person; (2) that the statement was false; (3) that the defendant was legally at fault in making the statement; and (4) that the plaintiff suffered harm. *Smith v. Danielczyk*, 400 Md. 98, 115 (2007).

Plaintiff had no constitutionally protected interest in accessing PGCC facilities as an alumna, a prospective student, or a member of the PGCC Alumni Association.

Plaintiff also asserts that the issuance of the July 26 Letter has caused her to be "embedded in law enforcement manifests," meaning that the ban notice shows up every time someone runs a background or credit check on her, "forever[] curtailing her constitutional rights." (ECF No. 26, at 16-17). These allegations, however, relate solely to the "stigma" that resulted from the allegedly defamatory statements and do nothing to establish the "plus" that is required before a defamation claim can be actionable under Section 1983. Accordingly, Counts IX and X will be dismissed in their entirety, as will that portion of Count XVII that can be construed as asserting a Section 1983 claim.[6]

### 5. Section 1983 Supervisory Liability – Count XIV

Count XIV of the amended complaint asserts a negligence claim against Robinson and Lee based on their alleged failure to comply with the PGCC Student Code in issuing the July 26 Letter and banning Plaintiff from campus. (ECF No. 20 ¶¶ 262-70). In their motion, the PGCC Defendants argue that this claim must be dismissed as the complaint alleges only intentional acts and

_____

[6] The common law claim for defamation that Plaintiff asserts as part of Count XVII will be addressed below.

because Plaintiff has failed to comply with the requirements set forth in the Maryland Local Government Tort Claims Act. (ECF No. 22, at 8-9). In her opposition and "Errata," Plaintiff asks that Count XIV be construed as both a common law claim for negligence and a claim for supervisory liability under Section 1983. (ECF No. 26, at 22-23).

As discussed, Plaintiff cannot amend her complaint *via* her opposition. Even if it were procedurally proper, Plaintiff's proposed Section 1983 claim for supervisory liability would fail. To hold a supervisor liable in a Section 1983 action, the plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citation omitted). Because, as discussed, the amended complaint does not plausibly allege that Plaintiff suffered a constitutional injury as a result of the July 26

Letter, any claim for supervisory liability under Section 1983 would likewise be subject to dismissal.[7]

### 6. Injunctive & Declaratory Relief – Counts XI & XII

Counts XI and XII of the amended complaint purport to assert claims against Robinson and Lee under Section 1983 for unspecified "declaratory relief" and "injunctive relief." These counts will be dismissed because they do not assert any separate claims but instead only request certain forms of relief.

### 7. Remaining State Law Claims[8]

All of the remaining counts assert state law claims: Count I asserts common law claims for deceit, misrepresentation, and fraud against Calvin Smith; Count II asserts a common law claim

---

[7] The common law claim for negligence that Plaintiff asserts in Count XIV will be addressed below.

[8] Although she submits an "Errata" sheet, is not clear whether Plaintiff seeks leave to file a second amended complaint in the event that the PGCC Defendants' motions are granted, in whole or in part. Typically, leave to amend should be freely given "when justice so requires," Fed.R.Civ.P. 15(a)(2), and should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile," *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). "An amendment is futile when the proposed amendment is clearly insufficient or frivolous on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin v. Blom*, No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012). Here, the deficiencies in Plaintiff's constitutional claims were not cured in her "Errata." There is no reason to believe that a different result would obtain if Plaintiff is allowed to file what would, in effect, be a third amended complaint.

for intentional infliction of emotional distress against Calvin Smith, Byrd, and Gist; what remains of Count XIV asserts a common law negligence claim against Robinson and Lee; and what remains of Count XVII asserts a common law defamation claim against Robinson and Lee. Because this action was removed on the basis of federal question jurisdiction and because all of Plaintiff's federal claims will be dismissed, questions arise as to (1) whether supplemental subject matter jurisdiction can be exercised over the remaining state law claims, and (2) if so, whether it should be exercised.

Pursuant to 28 U.S.C. § 1367(a), supplemental subject matter jurisdiction may be exercised over "all [nonfederal] claims that are so related to [federal] claims in the action . . . that they form part of the same case or controversy[.]" Assuming, for the sake of argument, that Plaintiff's remaining claims all meet this standard, the court still has discretion to retain, dismiss, or remand the nonfederal claims because the federal basis of the action is no longer present. *See* 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district courts in the Fourth Circuit "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished"). In exercising this discretion, courts should consider the "convenience and fairness to the parties, the

existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998)).

Considering that this case is still in its early stages, it is appropriate to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Instead, those claims will be remanded to the Circuit Court for Prince George's County, Maryland, for further consideration.

## V. Conclusion

For the foregoing reasons, the motion to seal filed by the PGCC Defendants will be granted; the motion for leave to file surreply by Plaintiff will be denied; and the motion to dismiss filed by the PGCC Defendants will be granted in part and denied in part. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
